UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 3-CR-16-270 |
| : | |
| v. : | (Conaboy, J.) |
| : | |
| JEFFREY MILLER, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S SENTENCING MEMORANDUM

I. INTRODUCTION

The defendant, Jeffrey Miller, pled guilty before the court to a two count information for multiple tax fraud charges. This case arose out of an investigation conducted by the Internal Revenue Service.

Jeffrey Miller is the sole shareholder of an S-Corporation named JMSI Environmental Corporation, located in Swoyersville, Pennsylvania. This company provides environmental consulting, compliance and testing services to local and regional clients. Mr. Miller failed to file his employment taxes since the companies' inception in 2005, which resulted in an investigation in 2009. The defendant then subsequently filed returns for 2005 through 2006. Additionally, Miller

1

failed to file personal income tax returns from 2009 through 2011.

The manner in which the defendant operated his business allowed him to evade the assessment and payment of personal income and employment taxes totaling $374,512.09 from 2008 through 2012. Miller failed to comply with IRS laws for nearly a decade (2006 tax year to 2016 tax year); specifically he failed to pay the IRS approximately $646,000 in income and employment taxes.

During the investigative years (2008 to 2012), the defendant engaged in affirmative acts to conceal his income, a required element in a felony evasion charge. A misdemeanor charge was recommended by the Internal Revenue Service ("IRS") because the defendant provided significant cooperation and assistance to the IRS by identifying the business expenses for his corporation.

On September 16, 2016, the government filed a two count Information against the defendant that charged him with a violation of Title 26 U.S.C. 7202, failure to withhold, remit, and account for employment taxes and a violation of Title 26 U.S.C 7203, failure to file

income tax returns.  On October 12, 2016, pursuant to a plea agreement, the defendant entered a plea of guilty to the Information.

The defendant's sentencing date has been continued multiple times to allow him to comply with the IRS and pay his outstanding tax returns.  During this seven-month period, the defendant continued to operate his business without remitting the taxes he held from employee's paychecks.  The defendant actions caused a customer that receives government money to help pay for their projects to enter into a contract under false pretenses.  The defendant signed a notarized statement this past February in order to obtain the sales contract.  This statement contained an acknowledgement that the defendant was not currently under investigation by any government agency.

On July 18, 2017, the defendant filed a Sentencing Memorandum requesting a sentence below the sentencing guidelines.  On July 24, 2017, a Motion to Continue was filed indicating that the defendant needed more time to pay restitution and would be filing back tax returns within a day.  According to IRS employees, as of July 28, 2017, there are still personal income tax returns and employment tax returns

outstanding.    The defendant has done little if anything to resolve any of the current tax liabilities he has with the Internal Revenue Service.

The Government is respectfully asking the court to review the manner in which the defendant operated his business that allowed him to evade the assessment and payment of personal income taxes and employment taxes for over a decade.  The Presentence Report caclulates a Total Offense Level of 15 and an advisory guidelines Range of 18-24 months.   The Government is respectfully requesting a sentence within the guideline range to foster voluntary compliance with the Federal tax laws relating to the self-assessment of tax.

## II.   FACTUAL OVERVIEW

The tax loss for sentencing purposes in this case is $374,512.  However, the defendant's outstanding tax liability from his long history of non-compliance is approximately $646,897 without penalties and interest.  The defendant's last payment to the IRS occurred on September 7, 2010 for $1,450 for personal tax liability. The IRS has no record of the defendant making payment towards his employment taxes for the past decade, specifically the 1st Qtr. 2006 through 1st Qtr. 2017.

The defendant has not complied with the terms of the plea agreement to file all delinquent personal income tax returns for the period 2012 to 2016; therefore, the tax loss for this four-year period could not be quantified. Listed below is schedule of the trust fund monies the defendant collected from employees but failed to remit to the IRS, as well as the FICA matching and his personal tax liability for a ten year period:

| Year | Total Tax Loss | Immaterial Difference due to rounding | Trust Fund Monies | FICA Matching | Failure to File (Pay) |
|---|---|---|---|---|---|
| 2006 | $12,670 | | $12,670 | *Not determined | *Not determined |
| 2007 | $20,805 | | $20,805 | *Not determined | *Not determined |
| 2008 | $68,454 | | $20,311 | $11,128 | $37,015 |
| 2009 | $75,886 | | $20,681 | $10,806 | $44,399 |
| 2010 | $94,876 | | $27,901 | $10,985 | $52,990 |
| 2011 | $97,926 | | $34,489 | $20,939 | $42,498 |
| 2012 | $59,303 | | $36,439 | $22,863 | *Not determined |
| **2013 | $43,317 | | $31,702 | $11,615 | *Not determined |
| **2014 | $56,574 | | $42,472 | $14,102 | *Not determined |
| **2015 | $70,847 | | $52,516 | $18,331 | *Not determined |
| **2016 | $46,238 | | $33,976 | $12,262 | *Not determined |
| Rounding | $1 | $1 | | | |
| **Total Tax Loss** | **$646,897** | **$1** | **$333,962** | **$136,032** | **$176,902** |
| Indicted Loss | (374,512) | ($1) | $139,821) | (57,788) | ($176,902) |

| Additional Tax Loss | $272,385 | | $194,141 | $78,244 | $0 |

*Not determined- This amount has not been determined for criminal tax purposes. The 2006 & 2007 tax year the Trust Fund Recovery Penalty was assessed.

**A report from the Electronic Fraud Detection System (EFDS) was used to determine W-2 wages and withholding amounts for JMSI employees.

The defendant has provided salaried employees Forms W-2 for each year under investigation, knowing that he did not report the wages or remit the trust fund monies to the IRS. Therefore, he would have known that employees filed their tax returns under the false assumption that the Federal tax withholding was remitted to the IRS. Therefore, a portion of the Federal tax withholding was refunded to these employees even though the defendant never paid the Federal taxes withholding to the IRS. By not filing information returns; such as Form W-3, Form W-2 and Schedule K-1 income with the IRS, the defendant circumvented the Combined Annual Wage Reporting (CAWR) as well as other document matching programs the IRS has in place to identify non-compliance.

In addition, the defendant also filed for Chapter 13 bankruptcy protection four times. The defendant was the sole owner and operator of his business finances and there was no segregation of duties at JMSI.

The defendant diverted corporate funds for his own personal use during this investigation. On December 2, 2016, the defendant filed for Chapter 13 bankruptcy protection, two months after he entered a guilty plea before the court. Miller submitted a bankruptcy Schedule E/F: Creditors Who Have Unsecured Claims, where he failed to disclose that he owed $374,512.09 in restitution to the IRS. Throughout the bankruptcy process the defendant failed to disclose that he plead guilty to a two-count Federal Information on an Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy- Part 4, Identity Legal Actions, Repossessions, and Foreclosures.

### III.   SENTENCING FACTORS

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Third Circuit Court of Appeals directed sentencing courts to follow a three-step process when imposing sentence:

(1)   Courts must continue to calculate a defendant's Guidelines precisely as they would have prior to *Booker*;

(2)   In doing so, they must formally rul[e] on the motions of both

parties and stat[e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[e] into account [our] Circuit's pre-*Booker* case law, which continues to have advisory force; and

    (3)    Finally, they are required to exercise [their] discretion by considering the relevant [18 U.S.C. § 3553(a)] factors in setting the sentence they impose regardless [of] whether it varies from the sentence calculated under the Guidelines. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

## Analysis of the Factors Pursuant to 18 U.S.C. 3553(a)

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence for this defendant is one within the advisory guideline range.

Unusual circumstances do not exist in this case that warrant a downward variance or departure from the applicable guideline range. Title 18 U.S.C. § 3553(a)(4) and (5) specifically direct the court to consider the applicable guidelines, and §3553(a)(6) commands that the court strive to avoid disparity in sentencing, which is best accomplished through faithful application of the guidelines. The § 3553(a) factors also

point to the conclusion that a guideline sentence is appropriate.

The Egregiousness of the Defendant's Offense Conduct

In order to effectively articulate and detail the defendant's scheme, the totality of the circumstances is addressed below. Even though the defendant cooperated with investigators, it did not deter him from stealing payroll tax by withholding from his employees for nearly three years after initial contact with the IRS Criminal Investigator. During the years under investigation, the defendant retained the services of a Certified Public Accountant to prepare payroll tax returns. Returns that he did not file. Mr. Miller has a long history of non-compliance with tax laws. The defendant paid partial wages in cash ("off the books") and failed to tell his accountant about these tax-free wages. The defendant continued to seek bankruptcy protection when he well knew that he would be unable to comply with the terms set forth by the court and he defendant diverted corporate funds, specifically payroll tax withholding, for his own personal use. After the defendant pled guilty in Federal court, he denied being a defendant in criminal proceedings on bankruptcy documents and on a notarized

statement provided by a customer. Mr. Miller did this to benefit himself and his business. The defendant has a long history of non-compliance with tax laws; and he unjustly enriched himself, with approximately $333,000, in stolen withholdings from employees' payroll for the past decade. Mr. Miller had the resources available to him to truthfully account for and remit the payroll taxes to the IRS but chose spend the funds personally and not to obey the law.

## Conclusion

The defendant faces a guideline range of 18 – 24 months in prison. The sentencing range reflects, at a minimum, the seriousness of the defendant's fraud scheme, the particular egregiousness of the scheme, and his lack of acceptance of responsibility for his crimes and the resulting harm. Therefore, the government believes a sentencing within the guideline range is appropriate in this case.

August 14, 2017                    Respectfully submitted,

                                                     BRUCE D. BRANDLER
                                                     United States Attorney

                                                     By: /s/ Evan Gotlob
                                                     Assistant U.S. Attorney
                                                     William J. Nealon Federal Building
                                                     235 North Washington Avenue
                                                     Scranton, Pennsylvania 18503

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on August 14, 2017, she served a copy of the attached:

## GOVERNMENT'S SENTENCING MEMORANDUM

by electronic filing.

James J. Haggerty, Esq.
Ingrid Cronin, Esq.

/s/Luann Manning

_____
 LUANN MANNING
 Supervisory Legal Assistant